UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:20-CR-64-SDJ-KPJ |
| | § | |
| JUSTIN LUKE MAGNUSON (3) | § | Filed under seal |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Justin Luke Magnuson's Motion to Revoke the Pretrial Detention Order. (Dkt. #253). Having considered the motion, the record, and the applicable law, the Court determines that the motion should be **DENIED**.

## I. BACKGROUND

Because this is not Magnuson's first request for release from pretrial detention, a brief recap is in order.[1]

On February 13, 2020, a federal grand jury returned a three-count indictment against Magnuson. (Dkt. #1). The indictment alleges that Magnuson conspired to commit possession with the intent to distribute marijuana and possession with the intent to distribute hashish oil. It also charges Magnuson with conspiracy to commit money laundering and aiding and abetting that offense.

Magnuson was arrested on August 7, 2020, and he made his initial appearance before the magistrate judge three days later. (Dkt. #65). After a hearing, during which the parties presented evidence and made arguments, (Dkt. #75, #80), the magistrate

---

[1] The Court's order denying Magnuson's prior motion for release contains a more detailed description of the relevant facts. (Dkt. #92). Magistrate Judge Nowak's detention order provides additional background. (Dkt. #83).

judge determined that Magnuson should be detained pending trial, (Dkt. #83). Magnuson moved to revoke or amend the pretrial detention order. (Dkt. #79). The Court denied the motion, concluding that the Government met its burden of showing that no combination of conditions of release pending trial would reasonably assure Magnuson's appearance at trial or the safety of the public. (Dkt. #92).

Magnuson now, once again, asks the Court to revoke or amend the pretrial detention order. (Dkt. #253). In addition to arguing that reconsideration of his detention is warranted under the Bail Reform Act, Magnuson asserts several other reasons why the Court should grant his request for release pending trial. So, the Court will once again address Magnuson's pretrial detention.

## II. LEGAL STANDARD

A person "ordered detained by a magistrate judge . . . may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 U.S.C. § 3145(b).

## III. DISCUSSION

Magnuson argues that reconsideration of his pretrial detention and his release pending trial is warranted under several theories. Invoking Section 3142(f)(2) of the Bail Reform Act, Magnuson seeks to reopen the detention hearing to challenge his continued detention, arguing that changed circumstances and new information uncovered in discovery undermine the Court's previous flight-risk and dangerousness determinations. (Dkt. #253). Magnuson also contends that he should be released under 18 U.S.C. § 3142(i) because his pretrial detention has impaired the preparation of his defense. Additionally, Magnuson says that his continued detention violates

18 U.S.C. § 3164(c), a provision of the Speedy Trial Act, and offends the Fifth Amendment's due process guarantee. The Court addresses each argument in turn.

## A. The Court Will Not Reopen the Detention Hearing Under Section 3142(f)(2) of the Bail Reform Act.

Magnuson first argues that the Court should reopen the detention hearing under Section 3142(f)(2) of the Bail Reform Act and reconsider its decision that Magnuson should be detained pending trial. The Court disagrees.

The Bail Reform Act provides that a defendant may be detained pending trial if a court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Flight risk and dangerousness are independent bases for imposing pretrial detention. *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992). In determining whether either basis applies, courts consider four factors: (1) the nature and circumstances of the charges, (2) the weight of the evidence, (3) the defendant's history and characteristics, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). A court has discretion in making this determination. *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989).

After the initial detention decision is made, a court "may" reopen the hearing if it finds "information exists [1] that was not known to the movant at the time of the hearing and [2] that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). The

threshold question, then, is whether a motion to reopen a detention hearing is based on information that was not known or available to the defendant at the time of the hearing. *See Hare*, 873 F.2d at 799 (declining to consider testimony of the defendant's family and friends because it was not new evidence). When such information is presented, the next question is whether that information is "sufficiently material" to the decision to detain the defendant. *See id.*

The latter point deserves elaboration. Because Section 3142(f)(2) requires new information to have a "material bearing," as opposed to simply a "bearing," on the detention decision, information that is merely relevant to the statutory grounds for detention is insufficient. *United States v. Worrell*, No. 1:21-CR-00292-RCL, 2021 WL 2366934, at *8–9 (D.D.C. June 9, 2021) (analyzing statutory language and concluding that the word "material" must be given meaning). Rather, the new information must be capable of "significantly affecting" the detention decision. *Id.* at *9. In other words, "reconsideration is permissible under this section only when there is new information that would materially influence the judgment about whether there are conditions of release which will reasonably assure that the defendant will not flee and will not harm any other person or the community." *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003).

Here, Magnuson argues that his future in-laws' offer to pledge their home as security for his release is a new fact that merits reopening the detention hearing. (Dkt. #253 at 3, 11). Not so. Magnuson has not shown that the property is newly acquired or that his future in-laws were unwilling to offer it as collateral at the time of his original detention hearing. Thus, Magnuson has failed to establish that this

4

information was not known to him at the time of the hearing. *See United States v. Simpson*, No. 3:09-CR-249-D(06), 2010 WL 3283053, at *5 (N.D. Tex. Aug. 19, 2010) (rejecting a nearly identical argument).

Magnuson also contends that new evidence uncovered in discovery shows he is not a flight risk. This evidence includes that (1) the no-spending limit credit card and large amount of U.S. currency found in Magnuson's residence were in his safe, not his go-bag; and (2) that he is no longer in possession of a private jet. (Dkt. #253 at 8–11). Even if this qualifies as new information that bears on Magnuson's risk of flight, it does not alone justify reopening the detention hearing.

The Court upheld the pretrial detention order for two independently sufficient reasons: flight risk and dangerousness. (Dkt. #92 at 11). Magnuson should therefore present new information that both increases the likelihood that he will appear at trial *and* shows he is less likely to pose a danger to the community. Otherwise, there is no point in reopening the detention hearing, as flight risk and dangerousness are independent grounds for pretrial detention. *See Rueben*, 974 F.2d at 586; *United States v. Ward*, 235 F.Supp.2d 1183, 1185–86 (N.D. Okla. 2002) (denying motion to reopen detention hearing because "while the proffered evidence might be relevant to Defendant's risk of flight, it would not counter the statutory presumption that Defendant would be a threat to the community if released").

As to dangerousness, Magnuson rehashes many of the same arguments he made in attempting to rebut evidence presented at the detention hearing and in his initial motion for review of the magistrate judge's pretrial detention order. He argues, for example, that he was merely puffing during telephone calls in which he made

violent threats and said he would send muscle to break a debtor's kneecaps. *See* (Dkt. #80 at 183). And he contends that his arrest for aggravated assault should not weigh against his release because that case is twenty-two years old. *See* (Dkt. #80 at 190–91). To the extent Magnuson reasserts contentions and relies on information known to him during the initial review of detention, his arguments do not comply with the statutory requirement that he supply new, material information to qualify for reconsideration under Section 3142(f)(2). *See Hare*, 873 F.2d at 799.

Aside from recycled arguments, Magnuson has submitted an affidavit of his friend and former head of security, Jaime Marmolejo. (Dkt. #254-1). The affidavit provides that, for safety purposes, Marmolejo advised Magnuson to place firearms in various locations within his residence because of riots that had occurred near his home in downtown Dallas. (Dkt. #254-1 at 1). The affidavit also indicates that some of the firearms found in Magnuson's residence belonged to Marmolejo and that the body armor discovered there, including a vest and helmet, were gifts from Marmolejo. (Dkt. #254-1 at 1). Although such evidence *might* have a material bearing on the issue of dangerousness, Magnuson offers no reason why he did not provide this information to the Court at his detention hearing. Thus, this is not information that was unknown to Magnuson at the time of the hearing. *See Hare*, 873 F.2d at 799 (holding that friend's testimony about the defendant's willingness to appear at prior prosecutions was not new evidence).

Magnuson also urges the Court to reconsider its dangerousness determination based on an order by a state judge. (Dkt. #253 at 5–7). The state-court order indicates that Magnuson's arrest for aggravated assault did not result in a conviction and that

6

criminal-justice agencies are prohibited from disclosing records related to this offense to the public. (Dkt. #253-1 at 2). Magnuson contends that this expungement order constitutes new and material information because the Government had seized and not disclosed his only copy of the order at the time of his detention hearing.

The problem with Magnuson's argument is twofold. First, Magnuson has not shown he was unaware at the time of his detention hearing that he had received deferred adjudication of the aggravated-assault charge for which pretrial services had noted that he had been convicted. (Dkt. #74 at 5). To the contrary, Magnuson says he kept a copy of the expungement order locked in his safe at his home, (Dkt. #253 at 5–6); (Dkt. #268 at 3), which suggests he knew about the disposition of his aggravated-assault case at the time of the hearing.

Second, even if Magnuson could establish that information about the deferred adjudication of his aggravated-assault charge was unknown to him at the time of his hearing, such information would not materially influence the Court's detention decision. The Court's dangerousness determination was based, in part, on the fact that "Magnuson has previously been arrested for violent conduct—specifically for aggravated assault causing serious bodily injury"—not a conviction. (Dkt. #92 at 11). Additionally, the Court relied on other evidence in concluding that Magnuson presents a serious danger to the public, including his alleged "participation in a drug organization implicated in distributing large quantities of illegal drugs," his "violent threats," and his "arsenal of weapons." (Dkt. #92 at 11). That Magnuson was not convicted of aggravated assault because of deferred adjudication would therefore have little—if any—bearing on the decision to detain him.

It appears Magnuson also suggests that the Court erroneously considered his arrest for aggravated assault because information related to the offense should not be disclosed under state law. (Dkt. #253 at 5–7). But Magnuson cites no authority to support this theory, and the Court is aware of none. The state-court expungement order itself only prohibits criminal-justice agencies "from disclosing to the *public* criminal history record information related to" Magnuson's commission of aggravated assault. (Dkt. #253-1 at 2 (emphasis added)). And the rules governing the admissibility of evidence in criminal trials do not apply to detention proceedings. 18 U.S.C. § 3142(f) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."); FED. R. EVID. 1101(d)(3) (providing that the rules do not apply in proceedings "considering whether to release on bail or otherwise"). So even if Magnuson's aggravated-assault records would not be admissible at trial, the Court could still consider that information in the context of the detention inquiry. *See United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

At the end of the day, Magnuson has not presented any previously unknown information that has a material bearing on whether there are conditions of release that will reasonably assure the safety of the public. Because that alone compels him to remain in custody pending trial, the Court declines to exercise its discretion to reopen the detention hearing under Section 3142(f)(2).

**B. Magnuson Is Not Entitled to Temporary Release Under Section 3142(i) of the Bail Reform Act.**

Magnuson next contends that Section 3142(i) of the Bail Reform Act requires his release because, in his view, his pretrial detention has impaired his ability to consult with counsel and prepare his defense. This argument also lacks merit.

In addition to permitting the reopening of a detention hearing under Section 3142(f)(2), the Bail Reform Act allows defendants ordered detained to move for temporary release under 18 U.S.C. § 3142(i). Section 3142(i) provides that a judicial officer may "permit the temporary release of the [defendant], in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The defendant has the burden to show that his temporary release is necessary to complete trial preparations. *United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases).

Here, Magnuson argues that his ability to prepare for and participate in his defense, which requires the review of thousands of pages of documents, is impaired because he is detained and subject to limitations of confinement. According to Magnuson, meetings with his attorneys "are only for limited periods [of] time and Magnuson cannot properly hear the video and audio files through Zoom." (Dkt. #253 at 12). Magnuson also says that some of his scheduled Zoom meetings with his attorneys have been canceled without warning, (Dkt. #253 at 13), he "is only given an

hour each day to use the jail computer, and he is not allowed to keep the thumb drive of discovery with his other belongings," (Dkt. #253 at 12).

Magnuson's arguments are not persuasive. He fails to cite a single case supporting his release under Section 3142(i), and he has not made an adequate showing that his temporary release is "necessary" to prepare his defense. 18 U.S.C. § 3142(i). To the contrary, Magnuson acknowledges that he can consult with his attorneys—both in person and electronically—and use the jail computer each day. (Dkt. #253 at 12). In fact, Magnuson notes that one of his attorneys recently spent "two full workdays" in jail meeting with him. (Dkt. #253 at 12). The Court is cognizant of the complexity of this case and volume of information at issue. But these factors, standing alone, are not sufficiently compelling to find Magnuson's release from detention is "necessary" for the preparation of his defense. Otherwise, "the more complicated the crime, the more likely a defendant should be released prior to trial. This is clearly an absurd result." *United States v. Petters*, No. 08–364 (RHK/AJB), 2009 WL 205188, at *2 (D. Minn. Jan. 28, 2009).

Although Magnuson concedes that he has been able to meet with his attorneys to prepare his defense, he contends that jail officials have punished him in retaliation for exercising that right. (Dkt. #268 at 5). For example, Magnuson claims that detention officers "unjustly strip-searched and [threw him] into solitary confinement for no reason" based on a "commissary violation" for which he never received a citation. (Dkt. #253 at 13). Such allegations are concerning, but Magnuson has not

10

explained how this alleged retaliatory conduct has prejudiced his defense or otherwise warrants his release under Section 3142(i).[2]

To be sure, Magnuson's release from pretrial detention would make it more convenient for him and his counsel to prepare his defense. But given the circumstances described above, Magnuson has not shown that his release is "necessary" for the preparation of his defense under 18 U.S.C. § 3142(i). The Court thus declines to release Magnuson on this basis.

## C. Magnuson is Not Eligible for Release Under Section 3164(c) of the Speedy Trial Act.

Magnuson also argues that he is entitled to release from pretrial detention under Section 3164(c) of the Speedy Trial Act because he has been continuously held for more than ninety days. Because Section 3164(b)'s ninety-day detention clock has not run, Magnuson is mistaken.

The Speedy Trial Act generally requires a criminal defendant's trial to start within seventy days of indictment or arraignment, whichever is later. 18 U.S.C. § 3161(c)(1). But certain periods of delay are not counted when calculating the time within which trial must begin. *Id.* § 3161(h). Section 3161(h) mandates the exclusion of time for various reasons, including delay from certain pretrial motions, joinder with codefendants, and continuances granted because "the ends of justice . . . outweigh the

---

[2] To the extent Magnuson contends that detention officers have punished him without due process in violation of his constitutional rights, he has not cited any legal authority indicating that release from pretrial detention is the appropriate remedy for such a violation. Magnuson, of course, may attempt to seek recourse through other means if he believes that detention officers have violated his right to due process. *See, e.g.*, 42 U.S.C. § 1983.

best interest of the public and the defendant in a speedy trial." *Id.* §§ 3161(h)(1), (6), (7)(A).

A separate provision of the Act, Section 3164(b), provides that the trial of any defendant detained pending trial "shall commence not later than ninety days following the beginning of such continuous detention." *Id.* § 3164(b). Section 3164(b) adds that the "periods of delay enumerated in section 3161(h) are excluded in computing the [ninety-day detention clock]." *Id.* Expiration of the ninety-day clock, "through no fault of the accused or his counsel," triggers "the automatic review by the court of the conditions of release" and the defendant's release from detention pending trial. *Id.* § 3164(c). So, a defendant seeking relief under Section 3164(c) must show both that the ninety-day pretrial detention clock has run and that the delay was "through no fault of the accused or his counsel." *See id.*

Here, Magnuson is ineligible for relief under Section 3164(c) because his ninety-day pretrial detention clock has not run. The Court has granted several ends-of-justice continuances at the request of various defendants in this case. Magnuson himself requested two of those continuances, and he did not object to any of the other requests to continue by his codefendants. The following periods of delay resulting from these continuances fall within Section 3161(h) and are therefore excluded in calculating the ninety-day detention clock under Section 3164(b):

- The time between August 28, 2020, and December 7, 2020, based on the Court's finding that the ends of justice served by granting Magnuson's motion for a continuance outweighed the best interests of the public and the defendants in a speedy trial. (Dkt. #96 (citing 18 U.S.C. §§ 3161(h)(7)(B) and (h)(6))).

12

- The time between December 7, 2020, and April 5, 2021, based on the Court's finding that the ends of justice served by granting Magnuson's motion for a continuance outweighed the best interests of the public and the defendants in a speedy trial. (Dkt. #112 (citing 18 U.S.C. §§ 3161(h)(7)(B) and (h)(6))).

- The time between April 5, 2021, and October 4, 2021, based on the Court's finding that the ends of justice served by granting the motion for a continuance filed by Magnuson's codefendant outweighed the best interests of the public and the defendants in a speedy trial. (Dkt. #161 (citing 18 U.S.C. §§ 3161(h)(7)(B) and (h)(6))). Although Magnuson did not join this motion, he separately requested that the Court "postpone the April 5, 2021 Final Pre-trial Conference, the trial, and the related deadlines detailed in the court's Amended Pre-Trial Order . . . until at least October 2021." (Dkt. #158).

- The time between October 4, 2021, and December 6, 2021, based on the Court's finding that the ends of justice served by granting the motions for a continuance filed by Magnuson's codefendants outweighed the best interests of the public and the defendants in a speedy trial. (Dkt. #259 (citing 18 U.S.C. §§ 3161(h)(7)(B) and (h)(6))).

Based on those ends-of-justice continuances alone, for purposes of the ninety-day limitation prescribed by Section 3164(b), at most twenty-one days have elapsed since Magnuson was arrested on August 7, 2020.[3] Because fewer than ninety days have elapsed so far, Section 3164(c) does not require automatic review of Magnuson's detention or his release.[4] *See United States v. Simpson*, 408 F.App'x 830, 832 (5th Cir.

---

[3] The Government argues that only one nonexcludable day has elapsed between August 10, 2020, and September 28, 2021, for purposes of Section 3164's ninety-day detention clock due to the Government's motion for detention, (Dkt. #65), and Magnuson's motion to revoke or amend the pretrial detention order, (Dkt. #79). Because ninety days have not elapsed even if the Court does not exclude this additional time, the Court need not decide whether those days also should be excluded. "[I]f it is not necessary to decide more, it is necessary not to decide more." *PDK Lab'ys, Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment).

[4] Some of the delay in this case has been occasioned by motions of defendants other than Magnuson. But a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted" is excludable under 18 U.S.C. § 3161(h)(6). So even if Section 3161(h)(7) does not

13

2011) (per curiam) (holding that "the 'ends-of-justice' continuance, which is properly excludable under § 3161(h)(7)(A), resulted in [the defendant] not being entitled to automatic review of [or release from] his pretrial detention under § 3164(c)"); *cf. Hare*, 873 F.2d at 800 ("Congress was, therefore, aware of the exceptions to the 90-day rule of the Speedy Trial Act and anticipated that those exceptions would apply to detention under the Bail Reform Act. We do not interpret the statute to require release merely because a court has ordered a continuance of a trial date to a time beyond the 90-day period.").

Attempting to head off this conclusion, Magnuson argues that the Section 3161(h) tolling analysis is context-specific and different when applied to Section 3164(b)—the ninety-day pretrial detention clock—than for Section 3161(c)—the seventy-day trial clock. An ends-of-justice continuance properly granted under Section 3161(h)(7), the argument goes, should not necessarily toll Section 3164(b)'s ninety-day limit on pretrial detention.[5] The Court cannot adopt this rationale because doing so would require departure from the plain meaning of Section 3164.

The first step of statutory interpretation is to analyze the language of the statute. *Rotkiske v. Klemm*, 140 S.Ct. 355, 360, 205 L.Ed.2d 291 (2019). This first step is also the last when "the words of a statute are unambiguous." *Id.* That's because courts must presume that Congress "says in a statute what it means and means in a

---

create excludable periods in determining whether Section 3164's ninety-day clock has run as to Magnuson, Section 3161(h)(6) does so.

[5] To be clear, Magnuson has not suggested that any of the continuances the Court has granted under Section 3161(h), which excluded time for purposes of the seventy-day trial clock, were improper. He argues only that they should not toll Section 3164(b)'s ninety-day pretrial detention clock.

statute what it says there." *Id.* (citation omitted). Relatedly, "there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." *Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932). This presumption of consistent usage, unless rebutted by textual context, applies not only to provisions contained in the same section of a statute but also when different sections of a statute are at issue. Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 170–72 (2012).

Here, the text of Section 3164(b) states that "[t]he periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section." 18 U.S.C. § 3164(b). That language unambiguously requires time excluded under Section 3161(h) to be excluded for purposes of Section 3164. This Court has no basis to ignore the plain language of the statute and conclude that a different ends-of-justice analysis is required before time excluded under Section 3161(h)(7) is excluded under Section 3164(b).

Magnuson does not contest the plain meaning of Section 3164 or point to any textual cues that indicate the tolling periods enumerated under Section 3161(h) apply differently to the presumptive ninety-day limit on pretrial detention. Instead, he suggests that some undefinable difference exists between a Section 3161(h) analysis and a Section 3164(b) analysis simply because he is seeking release from pretrial detention rather than dismissal of the indictment against him. As support for this position, Magnuson relies on *United States v. Theron*, 782 F.2d 1510 (10th Cir. 1986).

In *Theron*, the defendant was indicted with eleven others, ten of whom were released on bond, for conspiracy and mail fraud. *Id.* at 1511. The district court granted an eight-month ends-of-justice continuance requested by Theron's codefendants—but opposed by Theron—because of the complexity of the case. *Id.* at 1511, 1516. Theron sought release pending trial under Section 3164. *Id.* at 1512. The district court denied Theron's request. *Id.*

The Tenth Circuit reversed. *Id.* at 1516–17. It held that the reasonable-delay exclusion under Section 3161(h)(6), which applies to delays caused by the joinder of codefendants, "has a different meaning and application under § 3164 than under § 3161, because of the different context in which it arises." *Id.* at 1516. According to the Tenth Circuit,

> What might be reasonable delay to accommodate conservation of public resources by trying codefendants together as an exception to the Speedy Trial Act's seventy-day limit might become unreasonable when a defendant is incarcerated for more than ninety days without a chance to make bail. Thus it is possible, as here, that subsection (h)[(6)] will not require dismissal of the indictment but will require that the defendant be tried or released.

*Id.* The court also suggested that if it did not construe the statute to require Theron's release, his continued detention "would present serious constitutional questions" related to due process. *Id.* Thus, the court concluded that Theron's pretrial detention was "too long" and ordered that he "be released on bond with other appropriate restrictions or tried within the next thirty days." *Id.* at 1516–17.

Magnuson's reliance on *Theron* is misplaced. It is important to note, first, that *Theron* is not the law of this circuit. The Fifth Circuit has interpreted Section 3164(b) to mean what it says. *See Simpson*, 408 F.App'x at 832. And to the extent the Fifth

Circuit's interpretation and application of Section 3164 differs from the Tenth Circuit's, the former controls.

But even taking *Theron* on its own terms, the case is readily distinguishable. For one thing, the court in *Theron* did not consider whether time excluded under Section 3161(h)(7) based on an ends-of-justice continuance tolls the ninety-day detention clock in Section 3164. Also, the defendant in *Theron* consistently asserted his speedy trial rights. 782 F.2d at 1512. He "moved for a severance and an immediate trial, did not join any of his codefendants' motions," *id.* "opposed all continuances," *id.* at 1515, and took "no steps to delay trial," *id.* at 1516. By contrast, Magnuson has filed several pretrial motions, sought multiple continuances, and not objected to any of the motions to continue filed by his codefendants. Thus, *Theron* lends no succor to Magnuson.

At bottom, when proper tolling is considered, Magnuson has not yet been in pretrial detention for more than ninety days. Section 3164(c) of the Speedy Trial Act, therefore, does not require Magnuson's release pending trial.

## D. Magnuson's Continued Detention Does Not Violate Due Process.

Magnuson's final contention is that due process prohibits his ongoing detention. Once again, Magnuson is wrong.

"[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Pretrial detention for regulatory purposes "does not constitute punishment before trial in violation of the Due Process Clause." *United States v. Salerno*, 481 U.S. 739, 748, 107 S.Ct. 2095, 95 L.Ed.2d 697

(1987). But at some point, pretrial detention may become so protracted as to become punitive and, therefore, require release. *Hare*, 873 F.2d at 800–01.

Whether "regulatory" pretrial detention has become "punitive" for purposes of due process is necessarily a case-specific inquiry. *Id.* When conducting this inquiry, courts in this circuit consider "not only factors relevant in the initial detention decision" but also (1) "the length of the detention that has in fact occurred or may occur in the future," (2) "the non-speculative nature of future detention," (3) "the complexity of the case," and (4) "whether the strategy of one side or the other occasions the delay." *Id.* at 801.

### 1. Section 3142(g) Factors

As the Fifth Circuit has instructed, the Court first considers the factors relevant to the initial detention decision. *Id.* To repeat, those factors are (1) the nature and circumstances of the charges, (2) the weight of the evidence, (3) Magnuson's history and characteristics, and (4) the danger to any person or the community posed by his release. *See* 18 U.S.C. § 3142(g).

In the prior de novo review of the evidence supporting Magnuson's detention, the Court analyzed the Section 3142(g) factors and concluded that Magnuson should remain detained pending trial because no combination of release conditions would reasonably assure his appearance at trial or the safety of the public. (Dkt. #92 at 11). Magnuson does not address the Bail Reform Act factors as part of his due process challenge or suggest that they apply differently in this context. Nonetheless, based on the additional information as to flight risk that Magnuson has presented in his

motion, the Court will assume that the second factor—the weight of the evidence against Magnuson—is neutral for purposes of due process.

All the remaining Section 3142(g) factors, however, weigh against a due process violation. To the extent Magnuson addresses these factors in his most recent motion by repackaging arguments he made in his previous attempt to obtain release from pretrial detention, the Court rejects those arguments for the reasons stated in its prior order. *See* (Dkt. #92). As for the nature and circumstances of the offenses charged, Magnuson potentially faces a severe prison sentence because he stands accused of serious drug crimes for participating in nearly all stages of a large-scale drug-distribution enterprise. (Dkt. #92 at 8–9). Turning to his history and characteristics, Magnuson has a violent criminal history, has made unprovoked threats of violence, and had "an arsenal" of weapons stored in his home. (Dkt. #92 at 10–11). And based on those considerations, the Court again concludes that Magnuson's release would pose a serious danger to the public. *See* (Dkt. #92 at 11).

In sum, one of the Section 3142(g) factors is neutral and the other three support the conclusion that Magnuson's pretrial detention does not offend due process.

### 2. Length of Detention

Turning to the additional *Hare* factors, the court next considers the length of detention that has in fact occurred and may occur in the future. *Hare*, 873 F.2d at 801. At this point, Magnuson has been detained for approximately fifteen-and-a-half months. His trial is set to begin on March 21, 2022. (Dkt. #286). At that point, Magnuson will have been detained for approximately nineteen-and-a-half months. This is a significant period of detention, but that alone is not dispositive. *See Hare*,

873 F.2d at 801 (explaining that due process places no bright-line limit on the length of pretrial detention); *United States v. Orena*, 986 F.2d 628, 631 (2d Cir. 1993) ("[T]he length of a detention period will rarely by itself offend due process.").

Magnuson does not cite any binding precedent holding that such a period of pretrial detention offends due process. To the contrary, courts in this circuit have concluded in complex, multi-defendant cases such as this one that similar periods of pretrial detention do not violate due process. *See, e.g.*, *United States v. Stanford*, 722 F.Supp.2d 803, 810 (S.D. Tex. 2010) (finding nineteen-month detention did not violate due process); *Simpson*, 2010 WL 3283053, at *3 (concluding that detention of sixteen months did not violate due process). Other circuits also have upheld much longer periods of pretrial detention. *See, e.g.*, *United States v. Peters*, 28 F.3d 114, 1994 WL 325419, at *1 (10th Cir. 1994) (per curiam) (unpublished table decision) (concluding that pretrial detention lasting thirty-four months did not violate due process); *United States v. Millan*, 4 F.3d 1038, 1044, 1049 (2d Cir. 1993) (finding expected detention of thirty to thirty-one months did not violate due process).

Considering the applicable case law, the length of Magnuson's pretrial detention requires serious consideration of his due process claim. But this factor alone is insufficient to support such a claim. And when the length of Magnuson's pretrial detention is considered along with all the other factors, it weighs only slightly in favor of his release.

### 3. Non-Speculative Nature of Future Detention

The court must also consider the nature of any future detention and whether it is speculative. *Hare*, 873 F.2d at 801. Here, the future of Magnuson's pretrial

detention is not speculative; the trial is set to begin on March 21, 2022. (Dkt. #286).
Magnuson fails to point to any basis in the record to support the conclusion that trial
cannot commence at that time. Currently there are no pending motions to continue.
And a trial that begins on March 21, 2022, is more than four months away, providing
reasonable time for preparation despite the large number of defendants and
voluminous discovery in this case. Thus, this factor is at best neutral for Magnuson.

### 4. Complexity of the Case

The Court next considers the complexity of the case. *Id.* "When the complexity
of a case is a reason for the length of the detention, the detention continues to be
regulatory in nature rather than penal." *Simpson*, 2010 WL 3283053, at *3 (quoting
*Stanford*, 722 F.Supp.2d at 810). In his motion, Magnuson recognizes that "this case
is complex and involves many defendants" and also involves a "large amount of
discovery." (Dkt. #253 at 16–17). Given the complexity of the case, the large number
of defendants, and the volume of discovery, this factor weighs heavily against a due
process violation.

### 5. Trial Strategy Causing Delay

The final factor the Court considers is whether the litigation strategy of one
party or the other has caused the delay. *Hare*, 873 F.2d at 801. "Any delay occasioned
by prosecutorial strategy may be a basis upon which an exceedingly lengthy pretrial
detention offends due process." *Simpson*, 2010 WL 3283053, at *3 (quoting *Stanford*,
722 F.Supp.2d at 810). Magnuson does not argue that the Government's conduct in
this case has occasioned delay. Nor does the record reflect any intentional,
unwarranted delay by the Government. Rather, most of the delay is attributable to

21

the continuances requested by Magnuson and his codefendants, none of which Magnuson has objected to. Accordingly, this factor also weighs against finding a due process violation.

### 6. Balancing the Factors

Taken together, the relevant factors support the conclusion that Magnuson's pretrial detention continues to serve a proper regulatory purpose and is not punitive. Although the length of Magnuson's pretrial detention is significant, it is also justified. The inherent complexities of this multi-defendant case present both parties with voluminous discovery to absorb and the Court with myriad motions to address. Magnuson has not shown that the Government has delayed this case for strategic reasons. And the seriousness of the allegations against Magnuson, combined with the strength of the evidence establishing that he is a danger to the community, strongly weigh in favor of continued detention through trial. *See Salerno*, 481 U.S. at 747 (noting that "preventing danger to the community" is a regulatory interest supporting pretrial detention under the Bail Reform Act). Thus, the Court concludes that Magnuson's pretrial detention does not, at this time, violate due process.

### IV. CONCLUSION

For all these reasons, Defendant Justin Luke Magnuson's Motion to Revoke the Pretrial Detention Order, (Dkt. #253), is **DENIED**. Magnuson shall remain detained pending trial.

**So ORDERED and SIGNED this 16th day of November, 2021.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE